IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00026-MR

| | |
|---|---|
| WESLEY FULBRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| FNU HODGES, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of the pro se Complaint [Doc. 1]. Also proceeding is the Plaintiff's Motion for the Appointment of Counsel [Doc. 4]. The Plaintiff is proceeding in forma pauperis. [Doc. 8].

**I.  BACKGROUND**

The pro se Plaintiff, who is incarcerated at the Avery Mitchell Correctional Institution, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] He names as Defendants in their official and individual capacities:

---

[1] The Plaintiff is serving a sentence of up to nine years and 10 months' imprisonment for conspiracy to traffic in a schedule II controlled substance and possession of a firearm by a felon. This information is gleaned in part from the North Carolina Department of Public Safety's (NCDPS) website. See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0600694&searchLastName=fulbright&searchFirstName=wesley&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last visited

Darren E. Campbell,[2] the sheriff of Iredell County; John Doe, the Iredell County manager; and FNU Hodges, FNU Frye, and John Doe, Iredell County Sheriff's Office (ICSO) officers. He claims that Officers Hodges, Frye, and John Doe violated the Fourth and Fourteenth Amendments when they arrested him on a misdemeanor warrant in his home on March 10, 2019, and that Frye and, possibly, other unknown officers[3] searched his home with a warrant on March 14, 2019. [Doc. 1 at 5-7]. As injury, the Plaintiff claims "loss of property, loss of liberty, failure of guaranteed security in home from wrongful intrusion." [Id. at 8]. The Plaintiff seeks a declaratory judgment that the Defendants violated the Fourth and Fourteenth Amendments.[4] [Id.].

## II.  STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails

---

May 2, 2022); Fed. R. Evid. 201.
[2] "Name Unknown" in the Complaint. [Doc. 1 at 3].

[3] The Plaintiff does not name these unknown officers as Defendants.

[4] The Plaintiff does not seek damages or relief from his criminal conviction. [Doc. 1 at 8].

to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

The Plaintiff purports to sue the Defendants in their official and individual capacities. A state official can be sued in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir.

3

Case 5:22-cv-00026-MR Document 10 Filed 05/12/22 Page 3 of 12

2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required": the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," King, 825 F.3d at 223 (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

The Plaintiff claims that the Sheriff and the County Manager "are directly responsible for the training and oversight of its officers, and are partially responsible for the actions if the actions are deemed violative of the law of the State and the United States." [Doc. 1 at 8]. He does not allege that Sheriff Campbell and County Manager John Doe were personally

4

involved in the alleged violations of his rights, and therefore, he has failed to state a claim against them in their individual capacities. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (to establish individual capacity liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation). The allegations about training and oversight are too vague and conclusory to establish official-capacity or supervisory liability by Sheriff Campbell and County Manager John Doe. Rather, this claim appears to be based on respondeat superior, which does not apply in actions brought under § 1983. See Monell, 436 U.S. at 694. Accordingly the claims against Sheriff Campbell and County Manager John Doe are dismissed without prejudice.

The Plaintiff's official-capacity claims against Defendants Hodges, Frye, and Officer John Doe are, in substance, claims against the office of the sheriff itself. Gannt v. Whitaker, 203 F.Supp.2d 503, 508 (M.D.N.C. Feb. 26, 2002). However, the Plaintiff has failed to allege that a sheriff's office policy or custom played a role in the alleged violation of the Plaintiff's rights. Accordingly, the claims against the officers in their official capacities are dismissed without prejudice.

The Plaintiff purports to assert Fourth and Fourteenth Amendment claims against Defendants Hodges, Frye, and Officer John Doe in their

5

individual capacities for allegedly illegal searches and seizures. The Fourth Amendment provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Fourth Amendment is enforceable against the states through the Fourteenth Amendment's Due Process Clause. Mapp v. Ohio, 367 U.S. 643, 654-55 (1961).

"It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004)). However, "searches pursuant to a warrant will rarely require any deep injury into reasonableness, … for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." United States v. Leon, 468 U.S. 897, 922 (1984) (quoting Illinois v. Gates, 462 U.S. 213, 267(1983) (White, J., concurring); United States v. Ross, 456 U.S. 798, 823 n.32 (1982)) (internal quotations omitted). Further, "[a] valid arrest warrant, whether for a felony or a misdemeanor, carries with it the authority to conduct

6

a forcible entry so long as the police have a reasonable belief that the suspect resides at the place to be entered and is currently present there." United States v. Hall, No. 3:09-cr-19, 2009 WL 3165458, at *3-5 (W.D.N.C. Sept. 29, 2009) (Reidinger, J.) (quoting Ward v. Moore, 414 F.3d 968, 971 (8th Cir. 2005)).

"[D]uring the execution of an arrest warrant, law enforcement officers are authorized to perform a protective sweep of spaces in a home where a person posing a danger to the police could hide and launch an attack as long as the officers have a reasonable belief that the area swept could hold such a person." Hall, 2009 WL 3165458, at *7 (citing Maryland v. Buie, 494 U.S. 325 (1990)). "A protective sweep—where the circumstances justify it—does not entitle officers to conduct a full search of the premises, but rather extends only to a limited inspection of spaces where a person may actually be found." United States v. Green, 599 F.3d 360, 376 (4th Cir. 2010) (citing Buie, 494 U.S. at 333). When an incriminating item is in plain view by officers who did not violate the Fourth Amendment in arriving at the place where it was observed, "neither its observation nor its seizure would involve any invasion of privacy." Horton v. California, 496 U.S. 128, 133, 136 (1990). Further, immediately upon arresting an individual, an officer may lawfully search the

7

person of the arrestee, and may search the area within the arrestee's immediate control. Illinois v. Lafayette, 462 U.S. 640, 644 (1983).

The Supreme Court has recognized that "officers executing search warrants on occasion must damage property in order to perform their duty." Dalia v. United States, 441 U.S. 238, 258 (1979). However, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." United States v. Ramirez, 523 U.S. 65, 71 (1998). An officer's conduct does not violate the Fourth Amendment if the destruction is, as an objective matter, reasonably necessary to execute a lawful search warrant; nor does liability extend to accidental or incidental injury to property. Cybernet, LLC v. David, 954 F.3d 162, 169-70 (4th Cir. 2020).

The Plaintiff has failed to state Fourth Amendment claims with regard to the Defendant officers' entry into his home to arrest him on a failure to appear warrant for a misdemeanor [Doc. 1 at 6]; Hall, 2009 WL 3165458, at *3-5; for seizing a bong that was in plain view on a coffee table [id.]; Horton, 496 U.S. at 136; for seizing cash from the Plaintiff's pocket after he was arrested [id.]; Lafayette, 462 U.S. at 644; and searching on March 14 pursuant to a warrant [Doc. 1 at 6]; Leon, 468 U.S. at 992. The Plaintiff's

allegations that the Defendant officers dented a door during the March 10 entry and that they "damag[ed] property" during the March 14 search [Doc. 1 at 6-7] are too vague and conculsory, and are not sufficiently severe, to state a Fourth Amendment violation. See, e.g., Cybernet, LLC, 954 F.3d at 162 (damage including removal of security cameras by pulling planks from the roof was insufficiently severe to rise to the Fourth Amendment level). The Plaintiff's claim that methamphetamine that was seized on March 10 is also too vague and conclusory to proceed, as the Plaintiff fails to describe the circumstances of its discovery.

Moreover, the Plaintiff's claims about the methamphetamine and bong seizure appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that when a "prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. If the Court answers this question in the affirmative, then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Bishop v. Cty. of Macon, 484 F. App'x 753, 755 (4th Cir. 2012) (citation omitted).

Here, the Plaintiff admits that he was "criminally charged for the water bong and methamphetamine, for which he is currently serving a sentence."

[Doc. 1 at 7]. It therefore appears that, if the Court were to find that the bong and methamphetamine's discovery and seizure violated the Fourth Amendment, such would require their suppression and would necessarily imply the invalidity of his present conviction and sentence. See Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003) (plaintiff's § 1983 claim that his traffic stop was illegal would necessarily imply the invalidity of his drug trafficking conviction, because the drugs seized from his vehicle was uniquely available from the allegedly illegal search and, if it were suppressed, there would be no evidence to convict him for drug trafficking); Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("a state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration"). Accordingly, even if the Plaintiff's Fourth Amendment claims were adequately pled, they would be dismissed as barred by Heck.

Finally, the Plaintiff seeks the appointment of counsel. [Doc. 4]. He argues that he is unable to afford counsel; that the issues in this case are complex; that he is a prisoner with no access to a law library; that North Carolina Prisoner Legal Services will not respond to his requests for assistance; that he has no knowledge of the law and has relied on forms and a book from another inmate to file the Complaint. [Id.].

10

Case 5:22-cv-00026-MR   Document 10   Filed 05/12/22   Page 10 of 12

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). The Plaintiff has failed to demonstrate the existence of extraordinary circumstances that would warrant the appointment of counsel, and therefore, his Motion is denied.

## IV. CONCLUSION

In sum, the Plaintiff has failed to state a claim against any Defendant. The Complaint is dismissed without prejudice. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to show that Heck does not apply and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be allowed. Should the Plaintiff fail to timely amend his Complaint, this action will be dismissed without prejudice and without further notice to the Plaintiff.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] is **DISMISSED WITHOUT PREJUDICE**.

2. The Plaintiff shall have thirty (30) days in which to amend his Complaint in accordance with the terms of this Order. If the Plaintiff fails to amend the Complaint in accordance with this Order and within the time limit set by the Court, this action will be dismissed without prejudice and without further notice to the Plaintiff.

3. The Plaintiff's Motion for the Appointment of Counsel [Doc. 4] is **DENIED**.

The Clerk is respectfully instructed to mail the Plaintiff a blank § 1983 complaint form and a copy of this Order.

**IT IS SO ORDERED**.

Signed: May 12, 2022

Martin Reidinger
Chief United States District Judge